Filed 11/18/13  P. v. Kroes CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D063021 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD239887) |
| AMANDA LYNN KROES, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Leonard J. Klaif, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Stacy Tyler, Deputy Attorney General, for Plaintiff and Respondent.

This case arose out of the fraudulent purchase of a prescription medication at a CVS pharmacy in San Diego. A jury convicted Amanda Lynn Kroes of (1) unauthorized use of personal identifying information of another person (Pen. Code, § 530.5, subd. (a)) (undesignated statutory references will be to the Penal Code), (2) obtaining prescription drugs by fraud (Health & Saf. Code, § 11173, subd. (a)), and (3) commercial burglary (§ 459). At the sentencing hearing, the court reduced the offenses to misdemeanors and placed Kroes on three years' summary probation.

Kroes appeals, contending her burglary conviction must be reversed because the evidence was insufficient for the jury to conclude beyond a reasonable doubt that she had the criminal intent to commit prescription fraud at the time she entered the pharmacy. We affirm the judgment.

FACTUAL BACKGROUND

A. *The People's Case*

On January 1, 2012, at around 7:00 p.m., Kroes drove her boyfriend, Chad Morrow, to a CVS pharmacy in San Diego. Kroes had in her possession a prescription for 180 Norco[1] pills made out to her mother, Elizabeth Applehans.

Morrow testified that Kroes gave him the prescription as they pulled up to the pharmacy because she wanted him to go inside and fill the prescription. He stated that

---

[1]     An investigator employed by the California Department of Health Care Services testified that Norco is a brand name for a generic drug that is a mixture of hydrocodone and acetaminophen. Norco is a controlled substance.

Kroes told him her mother was in town to take her back to Colorado and she needed to have the prescription filled.

Carrying the prescription, Morrow entered the pharmacy alone, walked up to the pharmacy counter, and asked pharmacy technician, Tifinnie Hibbard, to fill the prescription, stating it was for his "mother-in-law." Morrow gave the prescription to Hibbard.

When Hibbard asked Morrow for Appelhans's insurance information, Morrow left the pharmacy counter and came back with Kroes a few minutes later. Kroes claimed the prescription was for her mother and told Hibbard that her mother was "in a lot of pain." Hibbard testified that Kroes "seemed really determined" to get Appelhans's insurance information because the cost of the Norco pills was "pretty high."

Kroes made a 20-minute phone call while Morrow sat down nearby. The call failed to produce Appelhans's insurance information, but Kroes showed Hibbard and the pharmacist on duty a photograph on her cell phone of Appelhans's driver's license, which had an address and date of birth that matched the information on the prescription. The pharmacist agreed to fill the prescription. A short time later, Morrow picked up the filled prescription and paid for it with cash.

The prescription was ostensibly filled out by "Khan Ha, M.D." Khan Ha, M.D., an emergency room physician at Sharp Coronado Hospital in San Diego, testified that neither the handwriting nor the signature on the prescription was his. Dr. Ha also testified the prescription in question was not written on his prescription pad because the paper was not the right size and contained information different than that found on his

3

prescription pad. Dr. Ha stated he did not recall ever seeing Appelhans as a patient, and he did not know Kroes.

Appelhans testified she was not in San Diego on January 1, 2012; she was in Colorado where she lives. The last time she was in San Diego before that date was in 2010. Appelhans also testified she did not give permission to Kroes or anyone else to use her name to obtain a prescription.

2. *The Defense*

The defense rested without presenting evidence.

DISCUSSION

Kroes contends her burglary conviction must be reversed because the evidence was insufficient for the jury to conclude beyond a reasonable doubt that she had the criminal intent to commit prescription fraud at the time she entered the CVS pharmacy. We reject this contention.

A. *Applicable Legal Principles*

1. *Elements of burglary*

Burglary is committed when a "person . . . enters any house, room, apartment . . . [or] other building . . . with intent to commit grand or petit larceny or any felony." (§ 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041.) The essence of the offense is entry with the proscribed intent; such entry constitutes the completed crime of burglary regardless of whether any felony or theft actually is committed. (See *People v. Lawrence* (2000) 24 Cal.4th 219, 232-233, citing *Montoya*, *supra*, at pp. 1041-1042; see also *People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18.)

4

2.  *Substantial evidence standard of review*

When assessing a challenge to the sufficiency of the evidence supporting a conviction, we apply the substantial evidence standard of review, under which we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence."  (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.)  "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact."  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

a.  *Intent required for burglary*

Regarding the sufficiency of evidence to support a burglary conviction, it is well-established that "the intent required for . . . burglary is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime."  (*People v. Lewis* (2001) 25 Cal.4th 610, 643; see also *In re Leanna W.* (2004) 120 Cal.App.4th 735, 741.)

B. *Analysis*

We are persuaded any rational trier of fact could find beyond a reasonable doubt that Kroes had the criminal intent to commit prescription fraud at the time she entered the pharmacy. The evidence at trial showed: (1) the prescription that Kroes had in her possession when she drove Morrow to the pharmacy indicated that the prescription was for her mother; (2) when Kroes gave the prescription to Morrow and asked him to go into the pharmacy to fill it, she told Morrow her mother was in town to take her back to Colorado and she needed to have the prescription filled; (3) however, Applehans was in Colorado, not San Diego, on that date; (4) the prescription was ostensibly filled out and signed by Dr. Ha, but—as Dr. Ha testified—neither the handwriting nor the signature on the prescription was his; (5) when Kroes entered the pharmacy after Morrow was unable to fill the prescription, she told Hibbard the prescription was for Applehans, but—as Applehans testified—Kroes did not have Applehans's permission to obtain a prescription on her behalf; and (6) to persuade Hibbard and the pharmacist to fill the prescription, Kroes showed them a cell phone photograph of Appelhans's driver's license that had an address and date of birth that matched the information on the prescription.

From the foregoing substantial evidence, any rational trier of fact could find beyond a reasonable doubt that before Kroes entered the pharmacy she knew the prescription in her possession was a forgery and she intended to use that prescription to commit prescription fraud. The evidence shows her statement to Morrow that Applehans was in San Diego was false, as was her statement to Hibbard that she (Kroes) was filling the prescription for Applehans. The evidence of these false statements shows

6

consciousness of guilt, prior knowledge that the prescription was a forgery, and intent to commit fraud.

Kroes's reliance on *In re Leanna W.*, *supra*, 120 Cal.App.4th 735, is unavailing. That case involved a juvenile who hosted a party at her grandmother's home while her grandmother was away. (*Id*. at p. 737.) The grandmother's home was vandalized and some of her property was stolen. (*Id*. at p. 738.) The juvenile court found true an allegation of burglary, but the Court of Appeal reversed the judgment, concluding the evidence was insufficient to support the juvenile court's finding because there was no evidence to show what the juvenile did while she was in the house. (*Id*. at pp. 738; 740.) Here, in contrast, the record shows exactly what Kroes did inside the pharmacy: She fraudulently persuaded Hibbard and the pharmacist to fill a prescription, which she knew was forged before she entered the pharmacy, by making false statements and showing them a cell phone photograph of Appelhans's driver's license that had an address and date of birth that matched the information on the prescription.

For the foregoing reasons, we conclude substantial evidence supports Kroe's burglary conviction.

DISPOSITION

The judgment is affirmed.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.