Filed 8/26/25  P. v. Kidd CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM EMIL KIDD, IV<br><br>    Defendant and Appellant. | A171307<br><br>(Lake County<br>Super. Ct. No. CR966266A) |

Defendant William Emil Kidd appeals from a judgment after a jury convicted him of second degree burglary (count 1; Pen. Code, § 459[1]) and receipt of stolen property (count 2; § 496, subdivision (a)).  His appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  Kidd was informed of his right to file a supplemental brief, but he did not do so.  Our independent review of the record revealed a potentially arguable issue about Kidd's sentencing, and we ordered the parties to submit supplemental briefs, which they did.  Both parties conclude there was no sentencing error, and we agree.  We find no errors or other issues requiring further briefing.  Accordingly, we affirm.

---

[1] All statutory references are to the Penal Code.

1

Kidd was charged in a first amended information with first degree burglary (§ 459) and receipt of stolen property (§ 496, subd. (a)), felonies. As to the burglary, it was alleged that on or about December 21, 2022, Kidd entered an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Robert and Ann Harper. As to the receipt of stolen property, it was alleged that on or about the same day he bought or received property exceeding $950 in value from Robert Harper, Ann Harper, Rodney Harper, and Walter White "specifically, tools, saddle and other property, which had been stolen and obtained by extortion, knowing the property to be stolen and obtained." The information alleged various aggravating factors and that Kidd was not eligible for probation.

Kidd was tried before a jury over the course of two days. On the first day, each counsel gave an opening statement, the prosecution put on its case, the defense put on its case and rested, and the prosecutor indicated there would be no rebuttal evidence.

Prosecution Case

Walter White is an in-law of Robert and Ann Harper and their son Rodney, and a sergeant in the Lake County Sheriff's Office. White is familiar with the Harpers' property, a 40-acre parcel on Cantwell Ranch Road known as the Ranch, which includes a main residence, and various outbuildings including a shop and barn. For the most part there is a fence around the property, and only one method of ingress, with a gate; the main residence is about two miles down a private road and is enclosed by a fence and gates. Ann and Robert Harper are elderly and have various ailments; they lived at the Ranch and also in a home down the road. The house is a "hoarder's paradise" with lots of items collected over the years from other family

2

members and brought to the property.  Family members also kept horses at the property.

In November 2022 White became concerned about other people being on the property; some of the hoods of the vehicles were found open (there were more than 70 vehicles on the property), a sliding glass door on one of the sheds was open and things appeared to be moved around.  But no one noticed anything missing at that time.  In response, the family started locking the gate on the property.  On December 15, White discovered the locked gate to the property was unhinged and a vehicle had run over the gate.  An outbuilding had been broken into and items were missing.  On December 20, 2022, White found the front door of the house was wide open with signs of forced entry.  White could tell someone had been in the house; "contents were moved around, stuff dumped out of drawers, . . . [d]rawers were left open on dressers, desks."  He did an inventory of his property and determined chains, binders, a winch bar, and straps were missing from an equipment trailer.  He contacted law enforcement to let them know there had been a break-in.  Before leaving he tried to secure the house as best he could.

The next night, December 21, a neighbor told the Harpers about a white Chevy Express van leaving the Ranch property with "horse saddles and stuff being seen through the back window."  White went to the property to check on his horse trailer and equipment trailer and found two saddles and tack were missing.

That same evening Lake County Sheriff's deputies investigated the burglaries at the Ranch.  Their investigation led them to a property about two miles away on Spruce Grove Road, where they found a flatbed truck, a white Chevy van, and a utility trailer with suspected stolen property inside.

Defendant Kidd was located in the house at Spruce Grove Road. The owner of the house gave law enforcement permission to enter. Kidd was in the shower stall hiding behind a shower curtain, fully clothed and wearing shoes. In his pockets were a chain and some rings identified by Ann Harper as hers, and a key to the locked utility trailer that held a black powder rifle that Rodney had recognized was his. At trial it was stipulated that the white Chevy van located on the Spruce Grove Road property on December 21 belonged to Kidd. Kidd told one of the sheriff's deputies that he bought many of the items seized earlier in the day in Clearlake.

Various Harper family members arrived at the scene on Spruce Grove Road and identified suspected stolen items from inside the white Chevy van, and the utility trailer.

<u>Defense Case</u>

Kidd called his mother, an acquaintance, and a friend and former landlord who testified that various items were his. Kidd's mother identified the flat bed truck as belonging to Kidd.

On the next day of trial, the court permitted defense counsel to re-open its case for Kidd's mother to testify about per capita payments she and Kidd received from the Cherokee nation. The prosecution did not object.

The jury was then instructed on the law. Each side gave closing arguments and the jury, with additional instruction, was excused to deliberate.

The jury returned a verdict the same day. Kidd was found guilty of second degree burglary (count 1) and receiving stolen property valued at over $950 (count 2). Kidd then waived his right to a jury trial on the circumstances in aggravation (Cal. Rules of Court, rule 4.421) that were alleged in the first amended information and agreed that the court could

4

decide the allegations.  The jury was excused.  The prosecutor withdrew the vulnerable victim allegation (rule 4.421(a)(3)).  The court found the following alleged aggravating circumstances were true beyond a reasonable doubt: Kidd planned the burglary (rule 4.421(a)(8)); the crime involved a large quantity of contraband (rule 4.421(a)(10)); Kidd's prior convictions were numerous or of increasing seriousness (rule 4.421(b)(2)); Kidd had served a prior term in prison or county jail (rule 4.421(b)(3)); and his prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)).  The court found not true the allegation that the crime involved taking or damage of great monetary value (rule 4.421(a)(9)).

On August 27, 2024, the court sentenced Kidd to the aggravated term of three years on count 1, and a concurrent three years on count 2, stayed pursuant to section 654, to be served in Lake County Jail.[2]

---

[2] At sentencing, in stating the circumstances in aggravation that warranted imposition of the upper term, the trial court included among other factors that the crime "involved a taking of great monetary value."  There was no objection to this statement or any part of the sentence.  It appears from the record however that the court found this particular factor not proven at the court trial after the jury reached its verdict.  The court said at the sentencing hearing that the "minutes aren't clear.  I don't remember specifically what findings I made.  [¶] I remember there was a number of them.  Even if some of these findings I just made were not proven at the court trial after the jury trial, the ones that were found are sufficient to impose the aggravating term in this case, and I do find that the aggravating term is appropriate based solely on the findings that I made at the court trial on the aggravating factors.  [¶] So I do find the aggravating factors outweigh the mitigating factors, which were none, both in number and in weight and will impose the upper term in this matter."

## DISCUSSION

### I.

Kidd's counsel filed a Wende brief identifying no error and asked us to review the record for any arguable issues on appeal. We asked for supplemental briefing on whether the trial court erred in sentencing defendant to three years for count 1 (burglary) and three years for count 2 (receiving stolen property) with execution of the sentence for count 2 stayed pursuant to section 654, rather than dismissing count 2. We asked the question because, immediately after the jury returned its verdicts, defense counsel inquired: "Your Honor, in light of the verdicts, there is some overlapping case law but should—should not Count Two be dismissed now, or it would just have to run concurrent as a matter of law?" The court responded, "[L]et's deal with that at sentencing, because I don't know off the top of my head." The record does not reflect further discussion of the issue at sentencing. The court is not aware of any pre-sentence briefing on the issue, or any previous consideration of the issue in the record.

During sentencing, without expressly addressing the issue, the court sentenced defendant on count 1 to three years in the "county jail prison," and on count 2 to three years in county jail prison. It found that section 654 applied, and "stay[ed] execution of the sentence on Count 2 pending completion of the service of the sentence on Count 1, with the stay to become permanent upon completion of that sentence."

In response to our request for supplemental briefing, Kidd contends the trial court did not err by imposing and staying the sentence on count 2, rather than dismissing it, explaining the appropriate remedy where a defendant is convicted of both burglary (§ 459) and receiving stolen property (§ 496) is to stay execution on the receiving count, which satisfied both

6

section 954, which allows multiple convictions, and section 654, which bars multiple punishments—exactly what the trial court did here. For this he relies, appropriately, on *People v. Allen* (1999) 21 Cal.4th 846, 867) which resolved a conflict of decisions and held that a "defendant may be convicted both of burglary and of violating section 496 with respect to property he stole in the burglary." (*Id*. at p. 866.) In his respondent's brief, the Attorney General agrees that there was no error in the sentence, for the same reasons. We agree that there was no sentencing error.

## II.

Aside from this issue, our review of the record pursuant to *Wende* has disclosed no reasonably arguable issues. Kidd was at all times represented by competent counsel. The jury's verdict is supported by substantial evidence. No ruling by the trial court in admitting or denying evidence amounted to an abuse of discretion. No improper instructions were given to the jury. The sentence imposed is lawful. The fines, fees and assessment appear to have been authorized by law.

## DISPOSITION

The judgment is affirmed.

_____

Miller, J.

WE CONCUR:

_____

Richman, Acting P.J.

_____

Desautels, J.

A171307, *People v. Kidd*

8